The 1984 Sentencing Reform Act confirmed that district courts have broad discretion to consider relevant information in imposing and modifying criminal sentences. Section 994T limits only one category of information in compassionate release cases. Section 3661 otherwise imposes, quote, no limitation on the information a court may receive and consider during sentencing. The Third Circuit, however, imposed a judicial limitation on compassionate release. It precluded district courts from considering a change in law that prospectively lowers sentences for offenses like Mr. Rutherford's as one fact in the total number of sentences that a court may receive and consider during sentencing. It also precludes a judicial mix of information for sentence modifications. That categorical limitation should be reversed. The government concedes that age and illness are ordinary circumstances for inmates. Yet, when combined with other factors, age and illness may be extraordinary and compelling in appropriate situations. Whether a change of law is ordinary, therefore, should not matter. Congress did not expressly limit that as a factor in considering modification of extremely long sentences. The Court should reject the government's contention that the 2018 First Step Act impliedly repealed the many provisions of the 1984 Act conferring broad discretion on district courts. I welcome the Court's questions. Mr. Frederick, it was Congress's choice not to make this retroactive. And it would seem rather odd that you would want to use that decision as a basis or a compelling reason to reduce a sentence that results from the prospective nature of the law. What Congress did in Section 403B of the First Step Act, Justice Thomas, was to apply it to pending cases. But Congress did not speak to the question of how that rule might apply in the 3582 situation. So, Congress was silent with respect to that. It was, as I acknowledge, with respect to pending cases, a narrowed rule about limited retroactivity. But that just means that Congress was leaving to the individual decision-making process in these compassionate release cases, up to the discretion of the judge, looking at the totality of the circumstances, whether or not the length and duration of a sentence and a disparity might be a relevant circumstance for that particular inmate. I want to point out that the government's principle here is an atextual one. It came up in the previous argument. Its idea about personal circumstances is nowhere found in the statute. And the idea of extraordinary and compelling depends on the changed circumstances that arise after the person has been sentenced. Justice Kavanaugh, in the earlier case, you inquired about the Sentencing Commission, and I want our position to be very clear about this. The Commission has spoken to the situation that is in Mr. Rutherford and Mr. Carter's cases. If the Commission reversed its course and took those changes of law that are prospective for unusually long sentences, we would have to respect that decision, because Congress said that for a compassionate release motion, it had to be done in a way that would allow the person to be released. And that decision would have to be done consistent with the Commission's policy statements. So under your hypothetical, as you posted in the previous case, we win our case. We could lose if the Commission were to change its position. You win if Justice Thomas's point, though, doesn't make the Commission's judgment inconsistent with the statute. You have an answer to that, but there's an if, I think, that goes after what you just said. And I'm happy to provide that answer, which is that Congress didn't intend to take the Commission's discretion away when it never addressed the issue of how compassionate release motions should be treated in this gun situation when they're taking the stacking away. And it certainly has a profound effect on the one issue we know Congress wanted in compassionate release cases to be considered, length of sentence. The whole idea of compassion, obviously, is to bring compassion by lowering the amount of time that a person is incarcerated. And so it makes logical sense that if you're going to consider any legal change, it would be one where society has demonstrated a will to decrease the amount of incarceration time for persons who might be subject to that kind of principle. And that makes sense for the totality of the circumstances that a district court would be obliged to take into account in looking at the other individual circumstances that are relevant for the person. Mr. Chief Justice, you raised the question about kind of a floodgate of problems, but let me address that by saying there are three institutions that are relevant here. There's obviously the Sentencing Commission, which takes into account data and looks at real cases. There are district courts that are entrusted with dealing with these kinds of factual matters all the time. And then there is appellate review under an abusive discretion standard. Appellate courts have exercised the reversal power under abusive discretion where district courts have gone too far. And I would point the court to a Sixth Circuit case called United States v. Bass in which the Sixth Circuit said the district court had gone too far in the post-COVID situation because it allowed for the reduction of a sentence of someone who had been committed to life imprisonment for committing several murders and involved in conspiracy for other violent acts. And the Sixth Circuit said that was an abusive discretion. So our view is that although there may be some motions filed in the fiscal year 2025, approximately 2,000 motions for compassionate release were filed, only 56 were granted under this B6 provision. That statistic is in the clinical law professor's brief at page 17. And is that because you think the compassionate release provision would not permit or would not make you eligible for a sentence reduction if this first step back disparity was the only basis? Like here, your client also alleged the COVID-19 and hypertension and obesity. Is it the plus factors that then would prevent it from becoming a huge loophole? Justice Barrett, these are always combination of factors. No one factor I think arises to the level that it would by itself be extraordinary compelling because the word reasons is in the statute. So it's got to be multiple reasons. Our client, of course, as you noted, had a very good rehabilitation record, has health issues, has family circumstances where his earlier release would enable him to help find and provide for his deceased sister's children. So these are the kinds of circumstances that a judge reasonably would take into account. Could a judge, let's say before the First Step Act was enacted, say that in my judgment, I really feel like these are excessively long sentences and treat that, like the judges, let's just say it's disquiet about the legal penalty that Congress has chosen to impose. Would that be an extraordinary compelling reason or is it only the subsequent change? Length of sentence is a factor. And it always has been a factor. And we know that because the Diaco case, the Bureau of Prisons, represented by the Department of Justice, came to court and said the long sentence should be reduced because of these disparate circumstances. Well, no, I'm just saying, just based on the judge's disagreement, you know, the judge's disagreement with the length of sentence that Congress chose to impose as a mandatory minimum. Mandatory minimums have long been thought to fall within the rule of compassionate release. So has life imprisonment, for that matter. And the Department of Justice agrees with that observation, filed a brief a couple of months ago in the Sixth Circuit in a case called Stricker, in which it took that position. So that is not an unusual feature of how compassionate release works. And that makes sense. I'm hearing Justice Barrett's question differently. And she'll correct me if I'm wrong. I think her question is, standing alone, could a judge use their unhappiness with mandatory minimums to grant compassionate release? That would be, I think, an abuse of discretion. Because the mandatory minimum set forth by statute indicates what Congress's judgment is. The extraordinary and compelling reasons are almost always plural. And in fact, the form that... But even if it weren't plural, could the judge take disquiet or disagreement with the statutory scheme prescribed by the statute as one of the reasons? Certainly the judge, in looking at the range of factors, would take into account that person's experience in looking at like cases to determine whether... I'm just saying disagreement. You keep going to disparity. I'm just saying just disagreement. I think Congress has been too harsh here. I think a judge is certainly not within his or her discretion to disagree with an act of Congress. Where I think the judges have addressed this particular issue, and where the Sentencing Commission addressed this particular issue, was to say that in the total mix of circumstances and information, it could be a factor. And it is certainly a factor that we would want to take into account, because the whole idea behind this provision was as a safety valve against unusually harsh and long sentences. The length of sentence is the key fact in all of these situations. Mr. Frederick, I'm not sure I understood your answer to Justice Barrett. Is it a permissible factor for a judge to include in the determination disapproval of the mandatory minimum? A judge would be committing an abuse of discretion to disagree with a policy judgment made by Congress. However, a judge would also be within his or her discretion to say that for this particular inmate, given the circumstances here, this minimum would be subject to compassionate release. I don't quite see the difference between those two things. Well, the difference, Your Honor, is that we are looking at the totality of the circumstances, the person's age, how much time the person served, whether the person has health issues, and the range of rehabilitation and other family circumstances. And the court could very well say, you know, this mandatory minimum is too harsh, and because of all these other factors... in a particular case, if there is something else. I think that the part of where I'm going to challenge your question's premise a little bit, Justice Alito, if I might, is that where you say, in all circumstances, because the judge is always looking at the one case before... Okay, so the judge, there's a case where the mandatory minimum is 10 years, and the judge says, I know that's the mandatory minimum for the run of cases, but in this particular case, I think, for a variety of reasons, having to do... that's too long. That's okay. Well, if your question is about original sentencing, I think that's a different... No, I'm... A modification. A mis-modification. If, under your hypothetical, the person is 75 years old, has a life-threatening disease, and the court says, you know, this mandatory minimum is pretty harsh, and the BOP is likely to be coming back here to say, we don't have the medical facilities to deal with that person, it is not an abusive discretion for the court to say, in this particular circumstance, that mandatory minimum is too harsh. Thank you, counsel. Well, just to continue the line of questioning briefly, well, you really shouldn't call it a mandatory minimum. You probably should call it something like the presumptive minimum, depending upon subsequent developments. Well, it's not for me to offer up words to Congress that Congress wrote in its statutes, Mr. Chief Justice. What I would say that, as a practical matter, compassionate release is the rare circumstance where, as a safety valve, the court takes into account the total mix of information in determining whether... and a downward adjustment in the length of time that the person incarcerated should serve. Well, in second-guessing the judgment of Congress. Well, Congress also has delegated this authority to the Sentencing Commission, and the Sentencing Commission has issued policy statements that speak to this very question that's at issue in our case, and district courts have exercised their discretion in compassionate release cases to deal with the mandatory minimum concept. Thank you, counsel. And so there's law on this. Justice Alito, anything further? If disquiet about the mandatory minimum is a permissible factor so long as it's linked with something else, do you think there are going to be a lot of cases in which defense attorneys are going to be totally unable to come up with some other thing to link to it? Well, Justice Alito, I would say that we do have experience with this question, that the Bureau of Prisons does have a form that the prisoner has to fill out and go through an administrative exhaustion procedure before even going to court, and that those factors are baked into the facts before, typically, a lawyer even gets involved in filing a motion for compassionate release in the district court. And district courts are free and have denied 85 percent of these motions. Justice Sotomayor? You presented your argument slightly different than Mr. Carter's attorney, but I don't want to move away from the fundamental question here, which is your client's situation is consonant with the Sentencing Commission's policy statement, correct? Yes. And so we would have to find that the Sentencing Commission exceeded or violated the statute. Why don't we deal with that? Because they're not saying disagreement with a mandatory minimum is enough to get a change. They're putting other qualifications. Why do those qualifications count as individual? Because they're extra textual. Congress made very clear in the 1984 Act, and that's why I would urge the court to consider the intent of the 1984 Congress, which delegated this authority to a new creation, the Sentencing Commission, and it said we want the commission to come up with an explanation for the extraordinary and compelling reasons that would underlie the inmate's compassionate release motion. And the commission, after some period of time, has done that. We now have a policy statement. That policy statement is consistent with our position. The extraordinary and compelling reasons do not have to be tied solely to the personal circumstances, although how long a person is being incarcerated is a personal circumstance for anybody who thinks about it. And so the commission's role here is to interpret those words. It has done so. Our case fits within those structures within the commission's policy statement. And why is it not a violation of the statute? It's not a violation of the statute. The government says it is, basically. Well, we'll hear more, I'm sure, about why the government thinks that. But it is not a violation of the statute because Congress made this delegation to the commission. It entrusted an expert agency, if you will, designed to collect information, talk to stakeholders, get district court input, et cetera, and render a policy statement. And, in fact, the commission's work here is a little bit narrower than if you were to take It's just simply the plain language of extraordinary and compelling in those words by themselves. Justice Kagan? Mr. Frederick, if your position were accepted, would the inquiry in a case like yours look pretty similar to the compassionate release inquiry in a crack cocaine case where there is consideration of the change in law that occurred in that area? Not necessarily. And the reason is that in the crack cocaine context, there was a retroactive application and a categorical context. And we know what that did to the system because the federal defenders and prosecutors had to get together to design mechanisms for informing district courts about how to deal with that. Here, because we're dealing with a changed circumstance for the gun offense, we're typically dealing with inmates who have a proclivity to do violence, likely did do violence in prison, violated their rehabilitation terms and other terms of incarceration. And so their individual circumstances, when viewed from the total mix, are almost certainly going to be different in most of these cases. Thank you. Justice Gorsuch? Mr. Frederick, I want your help with what the Sentencing Commission has said, put aside whether it can say it. It said that you should assume a change in law applies retroactively when Congress changes the law. But it says you cannot make that assumption with respect to our work in the sentencing guidelines unless we say so expressly. That seems to have things a little bit backwards, doesn't it? Justice Gorsuch, I would say that there are inconsistencies throughout this particular area of law. It creates conundrums for district courts to have to grapple with. This is a conundrum for us, I think. I appreciate that. But what I would say is that in the particular circumstance that we have here, we are not talking about a retroactive application in any kind of guise. You can reserve on that question and say whatever the commission has done. You want us to look at a change in law and assume Congress wanted us to do that, right? And the commission is saying, yeah, go ahead and do that. But don't do it with respect to our work. And that seems rather disrespectful of Congress's work and rather solicitous to its own. What I would say in the compassionate release circumstance, and that is different than the normal application of the sentencing guidelines, which are guidance to district courts in doing their sentences, and the reason why the commission would apply a rule about nonretroactivity in the initial sentencing is that it really will royal pending cases in a manner that would create more administrative burden. Our proposal here for compassionate release doesn't do that. Well, that gets back to all the questions we've already had about whether or not this opens up floodgates. I guess I'm less concerned about that than, again, just a solicitude that the commission shows to its own work, but not Congress, and if you could address that. I'm not here, obviously, representing the commission, but what I would say is that there are administrative reasons why the commission would determine that changes in its own guidelines or policy statements would create more uncertainty in application than where you were to take an idea that with someone incarcerated like Mr. Rutherford for 42 1⁄2 years for a sentence that should be 18 years or less, you might come to a different conclusion. Thank you. Mr. Cavanaugh? Just to pick up on that and Justice Thomas' original question, because the separation of powers issue concerns me here a bit, which is the First Step Act was obviously heavily negotiated and very carefully, a lot of back and forth on that, and retroactivity is, of course, always a key element of the negotiations as it was here when you are making a change in the criminal justice and criminal sentencing laws, and so Congress specifically, I think, says this is not going to be retroactive to those cases where sentences have already been imposed. And then the commission, though, then comes in and says, we're now going to give a second look for district judges to revisit those sentences, even though Congress in those sentences did not want them made retroactive, and that seems to be obviously the commission was very divided on this question, and the commission dissenters said this is a seismic structural change to our criminal justice system that countermands Congress's judgments. And that's my concern on this case, and I just wanted to give you an opportunity again to summarize why you don't think the commission, by doing this, has kind of countermanded Congress. There is certainly a huge difference between a categorical application of the rule, which we know from the crack and powder cocaine context, and a more limited case-by-case, totality-of-the-circumstances inquiry where you look at the effect of the stacking of the gun charges on the length of incarceration. And I think it's reasonable to suppose that in the context where you're dealing with a categorical change that has a very large systemic effect, and amicus briefs on our side point to all the steps that had to be taken, none of those have been taken and need to be taken in the 924C context. And the reason for that, Justice Kavanaugh, is that we're looking and we're trusting district judges to look at this on a case-by-case basis to decide whether or not a sentence reduction is warranted in light of the totality of the circumstances. That kind of inquiry... The disparity is there, were you? Some district judges are going to treat this wildly differently than other district judges one imagines, you know, in the same courthouse, even. I think that the disparities problem is one that ought to be concerning to reasonable people. Where I think that it is an inherent part of the system of sentencing that's been part of our system for 200 years, it's impossible to say there's complete uniformity, and when you do, then we had our own problems with that uniformity. Justice Barrett? Justice Jackson? So I think you're saying in response to Justice Kavanaugh that this isn't disrespectful from the Sentencing Commission's perspective because it didn't take Congress to be removing the ability for individualized consideration in particular cases. That's correct. And with respect to Justice Barrett's point about how this would operate with respect to a judge who had policy disagreements with a mandatory minimum, I guess I didn't take your argument in this case to really be about that at all. And by that I mean I thought what you were focusing on in this case is the fact that there's a sentencing disparity that has been created such that your client, if it's a sentence today, would not have the same sentencing exposure as Congress now has determined it because Congress has changed the statute. So it's not the court saying, I don't think people who do this sort of thing should be subject to this length of sentence. It was Congress who said that in this situation, right? That's correct. And Mr. Rutherford here served 19 years. He falls within the policy guidance that says you have to serve for more than 10 years before you even become eligible to invoke this particular argument. Right. So in some sense this is giving the opportunity for a consistency with what Congress has determined about what people who've done this sort of thing should get. Yes. And doing it, though, in a contextual way that takes into account the various circumstances of that inmate's behavior in prison, age, illness, family circumstances, and the like. And so in some sense the compelling circumstance here is that the change, this is kind of going back to Justice Kagan's point in the first case, that there's been a changed circumstance with respect to how long Congress believes that people in this circumstance should be sentenced. And even though Congress didn't necessarily want that to be applied categorically, there's nothing to preclude Congress, there's nothing to preclude courts from taking that into account in an individualized way in combination with all sorts of other factors if a person requests it. That's correct. And in 1984 Congress used the words that enabled that particular outcome, Justice Jackson. And I would just note in the original appeal Judge Ambrose affirmed the sentence but said it's unthinkable that in any system the sentence should be this long for the two robbery offenses that my client committed. Can I just ask you one other thing? Because I notice that there are differing views about the order of operations, just as a practical matter. The judge who was trying to entertain a compassionate release motion. And I think it might matter because sentencing disparities are actually prescribed by Congress as a consideration in 3553A. So if you have to do 3553A, then you're going to take into account the kind of thing that the government is now saying that you don't in the extraordinary and compelling circumstances world. So what I mean is what is your view of how this works? Lower courts, I think, are starting with the extraordinary and compelling circumstances factor with the sentencing commission's guidance, and then they turn to 3553A. The government seems to suggest that you start with extraordinary and compelling factor without the sentencing commission's guidance, then you go to 3553A, and then you consult the sentencing commission as a check or a limitation. But the statute suggests there's even another way of doing it, which is that you start with 3553A, and then you go to extraordinary and compelling with the sentencing commission. So what's your view on the order of operations in this? Justice Jackson, I confess that it has been a while since I did sentencing cases in the government, but I would say reading this particular statute, I don't know where this two- or three-part step where you just start negating things if they don't meet a certain threshold. The statute is worded as if certain things happen, then such and such, and that to me suggests that this is a gestalt. It is a totality of circumstances kind of inquiry, which order you do them in, we trust district judges to get to the right outcome based on those circumstances. And you admit that you see that 3553A does require consideration of unwarranted sentencing disparities. Yes. And it's in this statute, too. Yes, and it seems odd that you would say, well, we're only going to consider it, one, if we've nuked you out of a position to be able to bring that argument based on considering a different factor. Thank you. Thank you, counsel. Mr. O'Neill. Thank you, Mr. Chief Justice, and may it please the Court. I'd actually like to begin directly with Justice Gorsuch's question about the language and the carve-out that you referenced in the commission policy statement. There is very good reason for that carve-out, and it does not show disrespect for Congress. In fact, it shows the opposite. There is a separate statutory provision, Section 3582C, that specifically deals with reductions based on changed sentencing guidelines, and that requires in Section 994U specific findings that the commission needs to undertake. So in response to public comment during the very robust process that the Sentencing Commission undertook, the Sentencing Commission thought it was necessary to clarify how its guidance in B6 relates to that other guidance, which is set forth separately in Section 1.10. I'd also like to address, Justice Kavanaugh, your question and the one that Justice Thomas started with, because I think it is the essential argument for the government's position. Their argument is that B6 conflicts with the retroactivity provision of the First Step Act. There is no conflict. Section B6 does not purport to make that law retroactively applicable to defendants serving final sentences. Instead, it addresses a fundamentally different issue. When courts conduct an individualized assessment of a prisoner's circumstances under a separate statute, the question is, does the court have to blind itself to one factor, sentencing disparity, even though that factor may be highly relevant to the court's assigned task? We don't claim that our client could come in here under 403A and seek relief. But all that the commission instructed, all it decided, is that courts may, in their discretion, take that factor into account, but it allows that only in narrow and unusual circumstances. I also think it's very important, Justice Kavanaugh, to recount how we got here, how this issue arrived with the commission and how it arrived at the court. So after Congress eliminated BOP's role as the gatekeeper in the First Step Act, courts began to address prisoner-initiated motions of the kind that Congress allowed. And the courts disagreed about whether consideration of legal changes should or should not factor into the equation. Divide it into two camps. One camp said, you should always be taken into account, and the other said they should never be taken into account. The case came here, this court denied cert, after the government said, this is the commission's job to address. The commission undertook that process. It was perhaps the most, the public was as interested in this issue as it had ever been in any issue. And the commission adopted a middle ground. It didn't adopt the, you can always consider these. It didn't adopt the, you can never consider these. It said, you can consider them. But it responded to the government's concerns about administrability by putting in a 10-year bar before you could seek release. And it required this multi-factor test that incorporates the Section 3553A factors. So, in fact, Mr. O'Neill, how long was the sentencing commission, how long did it consider this? I believe that this was over about a six-month period. Okay. And I understand your point about, well, the commission, before it's going to make something retroactive, has certain hoops to go through. I get that point. And I appreciate that. But retroactive application of federal law also has some hoops to go through. And they're usually, we think of Congress doing those. And the evidence we have here is 403B. It says it shall apply, tells us exactly when it applies, depending cases, okay, where no sentences yet have been imposed. And then with respect to retroactivity, it tells us it shall also apply to those drug offenses in 404B. That seems like Congress thought pretty hard about this, to Justice Kavanaugh's point. And it is a bit of a leap to say, oh, Congress didn't think about this, and retroactivity of a criminal law in a sentence. It just failed to consider it. It seems a plausible possibility, but perhaps a little disrespectful. No. Justice Gorsuch, the question that Congress was considering in 403 was applicability to everybody. So does it apply to everybody moving forward? And does it apply to everybody moving back? Retroactivity would have meant that every defendant who had committed an offense before the act. It's pretty clearly ruled out, right? We agree that it's ruled out. Okay. Mr. Carter, because he is not in that class, he cannot claim relief under Section 403A. But Congress said nothing about whether the impact of those changes could be considered in the context of an entirely separate case. I understand that, and so we're having to draw an inference. But, boy, Congress spoke pretty clearly to retroactivity in 403 and 404. So, Justice Gorsuch, I make two points. First, even the government agrees that these changes actually can be taken into account, even for defendants serving final sentences. So the government agrees that when you get to what it calls the sentencing determining phase in this two-part stage that it imagines, that the court can take into account how the 403 changes affect the calculus. So that blows a hole in their idea that Congress never wanted these changes to have any effect on final sentences. And you can take it into account because the statute says so, right? Is the government's view that you can take it into account because this statute requires the court to refer to 3553A, and 3553A says sentencing disparities have to be taken into account? That's exactly right. The other point I would make, Justice Gorsuch, and it's baked into your question, is that this is an inference. It is an inference from congressional silence. And all of the government's arguments ultimately rest on trying to find implied limitations from congressional silence. The government wants to infer, and it's not just an implied limitation, it wants to infer a categorical bar against consideration of this fact, the fact of sentencing disparity. And it wants to infer not just a categorical bar on that factor, but a categorical bar on that factor ever entering into the equation, even though in combination with other factors or alone, even though Congress didn't do that, when it identified a specific factor, rehabilitation, as one that's off limits. That is a lot of meaning and content to read into congressional silence. There are at least five statutory rules of construction here that rule, that counsel against exactly that inferred limitation. The first is the most basic one, that this Court does not lightly assume that Congress omitted from statutes text that it meant to apply. That's Justice Scalia's opinion in JAMA. The second one is the rule that where Congress puts a specific limitation in a particular provision, you don't infer another one. The third is the rule from Kimbrough. We're dealing with a sentencing statute. Congress has said, Congress, excuse me, this Court has said Congress knows how to direct sentencing practices and express terms and has shown that it has done so. The fourth is the Concepcion principle. You start with the premise that Congress meant district courts to have the broadest possible discretion unless the Constitution or Congress explicitly limits it. It hasn't done so here. And then finally you add on top of that, because you have an express delegation to an agency or here to the Commission, Justice Thomas, your opinion in Little Sisters of the Poor made clear that where there is that kind of clear and express delegation, you rewrite the statute. You don't apply it if you start inferring limitations on that discretion that Congress did not apply. I will just make one more point about the scope of the Commission's discretion because, Justice Kavanaugh, I think you got that exactly right in the first argument today. This case is much simpler because Congress gave the Commission the responsibility to describe what should be considered extraordinary and compelling factors. The Commission has done that. So the question in this case is very simple and straightforward, and the question is just did the Commission's policy statement B6, is that a valid exercise of expressly delegated authority? When you said middle ground earlier, you were really focusing, I think, on the 10-year point. Is that accurate? It's not just the 10-year point. When the Commission first took this issue, it was urged to adopt a provision that would have said whenever changes are inequitable in light of changes to the law, that that would have allowed it. It didn't adopt that provision. Do you think they could have adopted that? I think that that probably would have been within the scope of the Commission's discretion. But I'd like to make two points about the government's parade of horribles here. The first is there is nothing in the Commission's history or its composition that would suggest it's going to adopt anything like the kinds of proposals that the government fears. In fact, the Commission's history is that it has been quite cautious, not cavalier, about the use of this power. If it did adopt any of those outlandish proposals, the guidance has to go in front of Congress for six months before it goes into effect, and Congress could reject it during that time, as Congress has done with previous Commission guidance. And then the second point is the fact that the Commission could have gone farther but chose not to do so simply shows the modesty and care with which it undertook this task. Thank you. Thank you, Counsel. Justice Thomas, anything further? Justice Alito? What do you think are the limits on how far the Commission could go? The Commission cannot violate a specific directive of Congress. The Commission needs to adopt purposes or reasons that are grounded in the purposes of sentencing. That's Section 994A2. The Commission's interpretation... You said it can't contradict a specific direction from Congress. Which specific directions would limit it? Well, for example, if the Commission were to say that rehabilitation alone were an adequate factor... Okay. What beyond that? There were questions earlier about whether the Commission could say, you district court may disagree as a matter of principle with mandatory minimums, and we would say that that would be a violation of the specific directive of Congress, that that is a reasonable punishment for that offense. Well, is there a provision that says specifically that the Commission cannot do that? There is a provision that the general principle of the Commission obviously can't violate. It's an inference from the imposition of a mandatory minimum, right? That's what it would be based on? No. That would be based on the fact that Congress said you may sentence someone to this offense. If the Commission said, district court, you may take your own disagreement with Congress about that as a policy matter, not in the context of the specific case or the circumstances of the prisoner's overall situation, but that would be in conflict with an act of Congress. I'm not sure I understood that. What is the difference between the inference that one would draw from a provision that imposes a mandatory minimum, namely that Congress did not want that to be disregarded in any case, and the inference that one might draw from a provision that says this change in the law will apply retroactively to this limited class of cases but no other? What is the difference between those two inferences? The difference is the latter does not take into account all of the circumstances that warrant relief in the prisoner's particular case. B-6 is all about the individual circumstances, whether in context the sentence is unusually long, whether it creates a gross disparity, whether the circumstances warrant it. The one that you hypothesized is an across-the-board, non-contextual rule that Congress can never consider. All right. Thank you. Ms. Silver? Then I don't understand your answer to Justice Kavanaugh. You said that if the Commission said every prisoner is entitled to compassionate release because of the mandatory minimum, the whatever, that that's okay, that's within their power. No, I think I was answering a different question. How did you answer it? Because I understood your answer to him, that if the Commission had taken what was the extreme position some people had proposed, that the mere change in law was enough, that that's okay. Thank you, Justice Sotomayor. Even that more extreme position would have required an evaluation of that. Yes, but why wouldn't it be itself an abuse of discretion? I'm very surprised at your answer to him, because it seems to me that the logic of your answer on the mandatory minimum is that if they do something so extreme as to ignore that Congress has not made this retroactive to all prisoners, why isn't that equally an abuse of discretion? Because the proposal that I was addressing, the inequitable in light of changes in the law, that incorporated individualized considerations. What I took the question to be asking about was an across-the-board, non-contextual rule that a district court may simply disagree with the policy of a mandatory minimum and treat that as an extraordinary and compelling reason. And that was Justice Alito's question. What I said in response to Justice Kavanaugh was that the Commission could have adopted a rule that didn't have all of the limitations that B-6 ultimately adopted, and simply said that... I don't understand that they had to have some limitations according to you.  They have to list some individual factors, correct? That's correct. That's correct. And so even that proposal would have been based on the particular circumstances of the prisoners' condition. So we're talking past each other. We're not talking about you arguing that they can say, this always constitutes a reason for compassion. We believe that a rule... Standing alone. Standing alone, exactly. We believe standing alone that that would be... They're coming very close to trying to treat 403-B... Sorry, 403-A as retroactive, and we concede that that's further than the Commission could go. Justice Kagan? Mr. O'Neill, same question that I asked Mr. Frederick. If your position is right, does the inquiry into sentence disparities in these gun cases start to look a lot like the inquiry into sentencing disparity in the crack cocaine cases? And if it does, is that odd given the textual difference between Section 403 and Section 404? The analysis is completely different between the crack cocaine cases and the kind that are covered in B6. The Federal Defender's Brief does an excellent job of explaining how different these procedures are. With 404, which was an actually retroactive law, district courts set up standing orders. Defendants were waved through because there was no question at the eligibility. As to eligibility, it was all about the 3553-A factors. Here, every case is considered on its individual facts. The courts exhaustively look at the prisoners' individual circumstances, and the statistics bear out this difference. So during the time that, as Mr. Frederick said, I think there have been 150 grants in total under B6, during that time, under 404 in the crack cocaine cases, there were 4,000. And that is a demonstration of how different these regimes are.  Justice Gorsuch? Justice Campbell? Justice Barrett? Justice Jackson? Thank you, Counsel. Thanks very much. Mr. Fagan? Thank you, Mr. Chief Justice, and may it please the Court. The core of the sentence reduction motions the petitioners are making in these cases is that they have received lower sentences if they were sentenced after the First Step Act changes to Section 924C. But in enacting those very changes, Congress made a categorical judgment to, in the words of the principal opinion in Hewitt, leave Section 1924C offenders with final sentences stuck with their old sentences. That categorical judgment can't be leveraged into extraordinary and compelling reasons that warrant reduction in petitioners' lawful, indeed legally mandated, sentences. Section 3582C1A1 isn't a license for either individual judges or the Sentencing Commission to create what's effectively a new form of judicial parole where someone who does not have extraordinary and compelling reasons warranting a sentence reduction can suddenly claim that they do in light of an expressly non-retroactive change in the law. Now, I think that's exactly what the Commission's done here. So to respond to the suggestion that this is a moderate middle ground solution, it is anything but a moderate middle ground solution because as to 924C offenders, which were top of mind when this was adopted, it includes basically everybody. Take the 10-year limitation. The minimum sentence for a stacked 924C offender is going to be 30 years, five for the first mandatory minimum and 25 for the consecutive. The difference between that and, say, a 10-year sentence under the new regime could easily be characterized as a gross disparity. And then we are down to, I think, basically just the individualized circumstances, and then we have judicial parole. If I may have one more second. If you listen to the reasons that Mr. Frederick gave for letting his client out, family circumstances and rehabilitation, that would be exactly the kind of reason that would have gotten you out on parole. I'm sorry, Justice Thomas, and thank you. What limits would you put on the commission's authority to describe what a compelling interest is or what an extraordinary circumstance is? Well, I don't think that they can simply disagree with Congress or authorize individual judges to disagree with Congress. Can they do that? What I'm hearing is that in standing alone they cannot disagree with Congress. That's what I'm hearing from the other side. But if it's a part of a totality of circumstances inquiry, then they can disagree with Congress. And I think the fundamental problem with that, Justice Thomas, is exactly what I just said, which is that it's a form of judicial parole. If you think back to what I said in the last case, essentially we are taking as a given that the other circumstances, the other reasons, are not in themselves something that would warrant a sentence reduction. They're not extraordinary and compelling enough. What gets them over the line is the fact that Congress adopted a nonretroactive change in law that it explicitly decided not to apply to prisoners in their circumstances, and that is what gets them consideration of these other factors that wouldn't be enough on their own. So what do you say to the argument that it's not necessarily a direct attack, a disagreement with Congress, but rather the effects of the provision, the, say, for example, nonretroactivity? Well, I think this is a direct attack on what Congress did because Congress drew a categorical line, and as the Principal Pennin-Hewitt recognized, that was partly to prevent all the re-litigation concerns. I think the fact that, as my opponents acknowledge, these are even more burdensome to litigate than Section 404 adjustments to sentences, which Congress expressly did make retroactive, is a strike against it. When Congress makes categorical judgments and it wants to allow for exceptions in individualized circumstances, it will enact something like the safety valve for mandatory minimums, which it again adjusted. That's in Section 402 of the First Step Act. And here you have what the Sentencing Commission in 2021 estimated was 2,412 offenders with stacked 924C sentences who'd be affected if this became retroactive. And as I was just suggesting earlier, this is essentially a full retroactivity provision in the sense that it opens the door to things that were not extraordinary and compelling reasons, suddenly crossing that threshold. Mr. Fagan, you've said that a couple of times, and I don't know that that's actually consistent with how this works in real life. In other words, you set up your argument both in the prior case and in this one to suggest that the court is marching in seriatim through these various criteria, and it starts with age, and it says, hmm, this is not extraordinary and compelling enough. Let me add illness. Oh, let me add, you know, sentencing disparity. And that things that previously would not be enough to get them over the line suddenly become so when you add in this other factor. My understanding through conception and also experience is that that's not exactly how it works. The court is looking at the totality of the circumstances. It doesn't necessarily go through and determine whether each individual criteria itself is an extraordinary and compelling circumstance. So, for example, age would never be, I mean, that's not extraordinary. Everybody gets old. So it's not really doing an individualized tick off the box for each criteria, and therefore it becomes problematic when we look at something like sentencing disparity. So if I reject that characterization of how it works, do you lose? Well, Your Honor, first of all, let me just tell you that that's not exactly what I'm saying that they do. They don't just lie. I'm not suggesting anyone is true. You said many times that criteria that would not in themselves qualify as extraordinary or compelling circumstances become so by adding in this, and that's the problem. So think of it this way, Justice Jackson. It's as though you are weighing something, and it has to weigh enough. It has to be. But I'm telling you, if I reject that characterization, you're starting with the empty scale and you're putting all the things on, not one at a time and seeing whether or not each thing gets you across the line. Your Honor, you're not necessarily doing it one at a time, but I think even they would acknowledge that they are not making the claim that if the question presented didn't matter, that is, if this were not a valid consideration, they would be eligible for relief. I'm saying you should not restrict the district court from doing a totality of the circumstances analysis that takes into account all of the circumstances, that the way you're setting this up, you're suggesting that certain circumstances should be left out because they're inappropriate. And in that case, you know, the court should not have any ability to consider them. And what I guess I'm suggesting is that we all seem to agree that this is a totality of the circumstances, and so why can't the court take this sort of thing into account, especially in this case where Congress has made a policy determination that indicates, that creates a sentencing disparity and indicates that this is a really unfair circumstance? Well, I guess two points to that, Your Honor. It's not phrased as a totality of the circumstances as such. It's extraordinary and compelling reasons that warrant a sentence reduction. And so you have to consider whether something that is being put on the table can contribute to that inquiry. I guess the second point, which builds on the first, is if you don't, you have a mix, and you don't have to, like, tease it out into individualized reasons necessarily, but if you have a mix that is not going to be sufficient, the other reasons that Mr. Frederick mentioned this morning, and they're not going to be sufficient on their own, I think their claim in this case, the only way they can succeed in this case, is if they are allowed to add this additional factor to the mix. Now, the upshot of adding that additional factor is they're adding something that is manifestly not extraordinary and not compelling because it is the normal operation, and here the express operation, of nonretroactivity law. And it also, again, I hate to keep repeating myself, but I think it's a point worth really driving home yet again. It's effectively, if you think about it on the flip side of the coin, creating judicial parole by unlocking the door to things that would not be extraordinary and compelling if that consideration were not on the table, and all of a sudden they can become a reason for release. Thank you for your patience. I just wanted to ask you about your Loper-Bright point and the degree of discretion that the Sentencing Commission has here. I'm going to state it, and then you tell me if I'm understanding your point correctly. You don't dispute, just as Kavanaugh pointed out, that the terms extraordinary and compelling are compassionate terms, and so the Sentencing Commission does have some discretion within words like that to enact policy statements. Right. Correct. Okay. I'm getting to the point, I think, that you want me to. Your point about Loper-Bright is that that discretion has to happen between certain goal posts, and the fact that the First Step Act has imposed a rule of nonretroactivity means that the commission has exceeded the limits on its authority. So it's not that it doesn't have a lot of discretion, but here it's bumped beyond that. That's exactly right, Justice Barrett. And I think one problem with their position, and I think it's been well illustrated in the other arguments in this case this morning, is there's really no limiting principle to what they're saying the commission could do. I admit I'm a little confused as to what their answer is to the hypothetical where the commission just decides to allow courts to disagree with mandatory minimums, but I think the reason they're not giving you a clear answer that the commission couldn't do that is because it logically torpedoes their argument, because, in their view, the commission can say anything it wants as long as it hasn't expressly precluded sentence reductions. But, of course, a mandatory minimum, like the one in 924C, just says the defendant, if you look at the language there, that it just says the defendant shall be sentenced to a term of no less than five years. So define the goalposts for me. I mean, you're saying they've gone past some goalposts, but Congress has not said anywhere, you commission can't look at nonretroactive changes in law. It hasn't said you can't look at changes in mandatory minimum. It hasn't said the only thing you can't look at alone, it said, is rehabilitation. That's the only limitation Congress has said. Well, it has said, Your Honor, under 994A, that the commission's policy statements have to be consistent with law. As for rehabilitation... Well, there is no law that says that. There's no law that limits what they can consider. Well, Your Honor, I think even... I'm sorry. And 3553A, thank you, tongue-tied on that one, does permit courts to look at disparity with co-defendants or with others. So I don't know where you're defining that the goalposts is defined by something that's not specified in law. So let me tee that out a little bit. I think they're not trying just to look at... There are a few points. Number one is the call I was having with Justice Kavanaugh in the first case about why the 3553A factors aren't the relevant consideration at this part of the inquiry. But even beyond that, they're not just looking at disparities alone. They're looking at disparities with offenders who were sentenced under a non-retroactive law that applied to them but didn't apply to these offenders. And I think even they, even my friends on the other side, would have to agree that you can draw some implicit lessons from Congress's enactments. To get to Justice Gorsuch's questions, that's exactly why the commission, I think, would claim that it has exempted its own non-retroactive amendments from its policy statement. It's because it believes that if it didn't do that, it would be overriding the limitations in 3582C2. And if it can't override 3582C2, I don't understand why it can override Section 403B of the First Step Act. Essentially what they're saying is that because none of these statutes expressly speak to sentence reductions, I guess 3582C2 does to some degree, but it doesn't expressly preclude the use of 3582C1A1 when there are other circumstances involved, because they don't expressly speak to sentence reductions, they are automatically possibly on the table. And if that's true, then there's substantial separation of powers concerns because then they essentially have the pen on sentencing law. Now if I could address rehabilitation for a second, Justice Sotomayor, I think there are a couple of points. One is rehabilitation is something that I think could otherwise have been considered an extraordinary and compelling reason. I think there are examples of many prisoners who would claim that they have extraordinary and compelling stories of rehabilitation. One thing that they're able to do under their position is just to take that rehabilitation, combine it with a non-retroactive change in law, something we know Congress didn't want to apply to these kinds of sentences. Do you think that someone who has rehabilitated, been in jail for 40 years, let's say, and is now 90 years old, and they have spent most of their life in prison, could not have a claim for compassionate release if they come in and said, I'm 90 years old, I'm going to die soon, because rarely do you last very long after 90. The chances are very slim. And now there's been a change in law, I can't qualify under your reading of this. So, Your Honor, in the absence of B-6, even the Commission wouldn't allow release under those circumstances, because it's not age as such, it's limited, I think it's B-2 is limited to age-related. So your answer is that wouldn't be enough? I think it might be within the... I didn't add that there was a change in law, all right? Because that's what's at issue here. So, Your Honor, I think that those may not be extraordinary and compelling on their own. If they were extraordinary and compelling on their own, this question wouldn't ever come up. The other problem with 994-T, I think, that's a real problem for them, is if they want to follow the expressio unius principle from the consideration of you can't consider just rehabilitation alone to its logical conclusion, then I don't see how they're able to maintain their position. What 994-T says about rehabilitation is that it's a consideration that can be considered in conjunction with other factors, but not on its own. But that seems to be exactly how they're treating non-retroactive changes in law as well. So if they think 994-T is something that says only rehabilitation can be treated in a particular way, they're violating their own principle. I think 994-T is just about limiting consideration of that one principle. If they instead think that non-retroactive changes in law can, on their own, be reasons why someone could get a sentence reduction, then I think there are even further problems with their position. But under their position, the Sentencing Commission could, in theory, come out with a rule that allows district courts simply to disagree with mandatory minimums. And then as we specify in our brief, the district court says at sentencing, well, you don't qualify for the safety valve. Unfortunately, even though I'd rather not, I'm forced to sentence you to this mandatory minimum, but I'd be very open to a compassionate release motion. The prisoner files one the next day. He waits 30 days, and the district court, because the BOP is not going to endorse it. And then 30 days later, the district court is able to reduce the sentence. That cannot be the way this works. Yet if they say that that can't happen, that that's somehow some kind of abusive discretion, that the commission doesn't have that authority, then I don't see how they have the authority. Their theory is that that is a direct conflict with Congress's statement in the statute that this is our policy choice with respect to what kind of sentence applies in this circumstance. And what I take them to be saying, and this is, I think, a really legitimate question, is do we have that same kind of conflict here? You suggest, and you, I think the linchpin of your argument, is that Congress's determination not to make this retroactive is a statement that Congress did not want anybody who was already serving these sentences to benefit from this sentence reduction. But I think there's also the possibility that instead of that inference being drawn from the retroactivity determination, there's the inference that Congress did not want to impose all of the administrative burdens that would apply or that would arise if there was categorical application of this to everyone without, you know, the way in which retroactivity works. If we believe that that's what Congress was saying, that's what Congress was saying when it said no retroactivity, there isn't a conflict with a circumstance in which you look at 3553A and you look at 3582, the compassionate release, and take into account something like sentencing disparity. Well, Your Honor, I think it's difficult to look at 403B, particularly in context where Congress did enact other retroactivity mechanisms, and plainly did so because in the entire interregnum period between the Fair Sentencing Act and the enactment of Section 404, which made the Fair Sentencing Act of 2010's changes for crack cocaine offenders retroactive, and during that entire eight-year period, no one ever thought that Section 3582C1A1 could do work for at least some subset of those offenders. I think it's a little difficult to look at 403B in that context and see it as anything other than as a policy judgment to leave offenders who had final sentences stuck with their old friends. What do we do with the fact that Congress did not speak to its directive in the compassionate release scenario that you look, as a judge, to 3553A, which allows for consideration of sentencing disparities? It seems to me that if you're right, Congress would have needed to amend the compassionate release statute, either within the statute itself or taking out 3553A or addressing it like it did in 994T, to take the sentencing reductions out of it. I don't think so, Your Honor. I think that's imposing kind of a clear statement rule on Congress to exclude particular enactments of law from the operation of 3582C1A1. It certainly didn't do so in 924C itself in saying a defendant shall be sentenced to a particular offense. And to your earlier point about administrative burdens, I think what Congress would have been creating if it allowed for this kind of judicial parole system is an even greater administrative burden on the courts, because what it's reenacting is exactly what we had pre-sentencing reform act, where there's kind of a forced rehabilitation scheme. We talked about this a little bit in our brief in RICO, the case the court heard last Monday, where prisoners think that they need to rehabilitate and that's how they're going to get out. And so they work to rehabilitate. And five years from now, we'll see each of these 2412 affected 924C offenders, to the extent they haven't already been let out, claim rehabilitation. And if that fails, they'll file another one a couple years after that. And I don't think that's the scheme that Congress was creating, which is even more burdensome than some of the streamlined schemes that were developed under Section 404. Why did Congress distinguish, do you think or do you know, the crack offense retroactivity from the 924C offense retroactivity? Well, the crack offense retroactivity was actually making up for a loophole, but a problem that perceived after the Fair Sentencing Act where, as the court discussed in Dorsey, it had made the changes effective from that day forward, essentially exactly what Congress then decided to do in 403B and was making up for that for the set of prisoners who were still in prison for those offenses. I think actually the fact that Congress was deliberately doing that, that is truing up offenders where it had enacted a 403B-like scheme, and at the same time enacting 403B really does point up that contextually Congress could not have meant to be allowing the kind of thing that petitioners say they're allowing here. Nor would it just be 403B because Section 401 of the First Step Act made some further changes to the drug sentencing provisions of 21 U.S.C. 841, changing the nature of the predicates, and for that, there is a 401B that looks exactly like 403B, and there's another, the commission estimated in 2021, 3,742 offenders would be affected by that. So to the extent they're still in prison, it would be opening the door to sentence reduction motions by them. There's another level of the problem here, which is that the commission's Rule B-6 also purports to authorize reliance on other non-retroactive changes in law. So we will get things like and are getting things like claims under Booker, United States against Booker, which is non-retroactive about the changes to the guidelines, the advisory guidelines, and all sorts of other claims about non-retroactive changes in law. So you will get some kinds of things that would exhibit the sorts of problems I was mentioning in the last case, where something has to be retroactive in order to qualify as a valid Section 2255 claim. Can I just ask you one more thing about the commission? How is it that the commission is way out of line in a situation in which the courts were deeply split on this issue to begin with, before the commission even entered? Well, Your Honor, I don't think the mere fact that the courts were split reflected that the commission could resolve that reasonable policy disagreement, because as we... Well, as we expressly told the courts, like once this becomes, and is the Third Circuit recognized in this case, once one of the courts, the six courts that went in our favor as opposed to the four that didn't, I mean, once they agree with us that this is not a valid consideration under the statute, the commission doesn't have the authority to adopt under the statute. And this is also what the three dissenting commissioners said. They said the commission doesn't have the authority to adopt under the statute, something that the statute doesn't in the first place allow. That just means you disagree with the commission's statutory reading. I guess I'm just trying to understand why it's unreasonable, given that some courts agreed or thought that it was okay under the statute. Well... The commission just, it seems to me the commission agreed with the courts that didn't agree with you, said it was okay under the statute, but only under these limited circumstances. Why is that just completely an abuse of the commission's authority? I mean, to put brass tacks to it, Your Honor, the four courts that thought this was permissible under the statute are wrong. And it's not just a re, it's not resolving some sort of, you know, you could do it one way, you could do it another way kind of disagreement between the courts of appeals. If you can't do it under the statute, which is what the majority of courts have said, then the commission can't do it either, and they can't do it in a purportedly limited way that, as I've mentioned earlier, is not particularly limited. But as I was about to say, I mean, I think it's an overused kind of homily that Congress doesn't hide elephants in mouse holes, but this is a pretty big elephant to have hidden in this mouse hole for Congress to have done with Section 3582C1A1 reductions. And I don't think there's any evidence in the history, any evidence in the context, that that's what Congress was directing these things at. I think this applies to both the cases this morning, both Section 2255 claims and nonretroactive changes in law. There are often cases in which Congress decides to ameliorate sentences going forward. The court has described those as perfectly ordinary decisions by Congress. It's also the ordinary business of the courts to reinterpret statutes, which can also be nonretroactive, particularly where they're just dealing with procedural matters. And I don't think Congress was opening the door up for those kinds of claims either. Even if a lot of these claims are going to be rejected, they are quite burdensome on courts. That's true in the 2255 context, where you've essentially got new habeas motions or post-conviction motions. And it's going to be equally true in this case, where the court has to go through the individualized circumstances of each defendant and try to combine all the apples and oranges to figure out whether this particular prisoner is deserving of relief. I guess what strikes me, Mr. Fagan, is that there's neither an elephant nor a mouse hole here. Not a mouse hole, because Congress is perfectly well aware of sentencing modification proceedings and knows that this is an important part of the criminal process. Not an elephant in the following way. What you're saying is that when Congress set up a rule that says this statute should apply prospectively, not retroactively, Congress must have meant, with respect to everybody, in all circumstances. I think I'm going to make you repeat your argument about why that's true. Because if we take it as a given that the Sentencing Commission could not say, of course, if you come in and the sentencing proceeding will give you relief no matter what, all you have to do is point to a sentencing disparity, then I might say, okay, now you have an elephant problem. But that's not what the Sentencing Commission did. The Sentencing Commission set particular criteria, and then on top of that said only given all the surrounding circumstances of your case. So what the Sentencing Commission did was to say, we're respecting the rule that Congress has set up, but the rule that Congress set up is a categorical one that doesn't ask us to say, within an individual case, that the sentencing disparity can have no weight at all. Well, let me address the mousehole and the elephant point separately. As to the mousehole point, I think we did have a mousehole here because neither they, nor any of their amici, nor any of the parties or amici in the previous case have ever pointed to a single instance of Section 3582C1A1 ever being used for these kinds of legal changes that they're pointing to in these set of cases. So I don't think Congress had any reason to anticipate that this was an option on the table. And I realize I have apologized to Chief Justice. Why don't you finish, and then we won't. I'm sorry. I won't ask any more questions. And we do have stoppage time. So as to the elephant, Your Honor, I do think that this would be authorizing quite a lot, because I think there's been a lot of focus on what's going to get granted and what isn't. I think there are a lot of motions that are going to get granted. It's not a huge and significant difference, but we are seeing higher percentages of grants in the circuits that do allow consideration of nonretroactive changes in law. I think we have every reason to believe that that could increase in the future as prisoners decide to build up some kind of record that might suggest rehabilitation and then force the courts to evaluate whether they have done enough. There is absolutely no time limit or numerical limit on the number of these motions that we will see. Thank you. Thank you, Counsel. Justice Thomas? Justice Sotomayor? I don't get a chance. Justice Gorsuch? Justice Jackson? Thank you. Thank you, Counsel. Rebuttal, Mr. Frederick. I'd like to start with Justice Barrett's question. To accept the idea that Section 403B applies in the way the government advocates here would be to accept the proposition of implied repeal of provisions of the 1984 Act. Nothing in the 2018 Congress suggested that Congress intended to limit the scope of considerations that the Sentencing Commission would authorize. I would accept, though, that under your hypothetical as you posted, if the Sentencing Commission came and said it shall apply to pending cases, contrary to what Congress said specifically in the 403 provision, that would be ultra-virus and outside what the Commission did. But I would urge you to look at the words in 994T, which gives the Sentencing Commission very broad authority to come up with factors, a list of criteria, and to explain the circumstances in which extraordinary and compelling would apply. Justice Gorsuch, to your questions, I would suggest that the standard for dealing with an implied repeal are very strict. And so to accept the government's notion here, you would have to accept the idea that words that had nothing to do with compassionate release, nonetheless, were intended to impose limits, and that judges would be authorized to create limits. And yet that goes against a number of this Court's canons. One is the idea we don't have an implied repeal unless there is a strict standard that is met. We don't ask for judge-made rules that interfere with congressional statutes that give broad authority. And the third is the idea that we would accept the principle that a statute that speaks directly to a question is somehow going to be negated in some fashion sub salientio by a later enactment. I would urge you also to consider that sentencing length is always part of these compassionate release motions. That doesn't mean that it is an automatic application of the revocation of the stacking that occurred in the 2018 Act. It could very well be that a judge says you automatically would have gotten 18 years lower, but because of your prison conduct or because of other factors, I deem your reduction only to be five years. This Court doesn't need to decide what the extraordinary and compelling circumstances are. It should be for district courts to decide that. All we're asking you to do is to say that judges are not authorized to preclude the consideration of factors that district courts can take into account. This is not a mechanical exercise. It looks at the individual circumstances of every inmate to determine whether, based on the totality of the circumstances, that inmate is entitled to a reduction. Thank you. Thank you, Counsel. The case is submitted.